UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22-cr-00258-SRC |
| ) | |
| MAXIMILLIAN GREGORY VERBOWSKI, ) | |
| ) | |
| Defendant. ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant MAXIMILLIAN GREGORY VERBOWSKI, represented by defense counsel Mark Hammer, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I, II and V of the charge, the Government agrees that no further federal prosecution will be brought in this District relative to the defendant's conspiracy to counterfeit drugs and sell counterfeit drugs, the defendant's sale of counterfeit

1

drugs, and the defendant's mail fraud, all occurring between October 2019 and August 2021, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

**3. ELEMENTS:**

As to **Count I**, the defendant admits to knowingly violating Title 18, United States Code, Section 371, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, two or more people reached an agreement to commit the crime of counterfeiting drugs and selling counterfeit drugs;

Two, the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;

Three, at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement; and

Four, while the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

As to **Count II**, the defendant admits to knowingly violating Title 21, United States Code, Section 331(i)(3), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, the defendant knowingly did some act that caused the sale or dispensing of a counterfeit drug.

As to **Count V**, the defendant admits to knowingly violating Title 18, United States Code, Section 1342, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, the defendant took or received from any post office or authorized depository of mail matter, any letter, package or other mail matter addressed to a fictitious, false, or assumed title, name or address or name other than the defendant's own proper name; and

Two, the defendant did so for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any unlawful business.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

1. Beginning in approximately October 2019 and continuing until August 30, 2021, in the Eastern District of Missouri and elsewhere, the defendant did knowingly, and unlawfully combine, conspire, agree, and confederate together with B.A., and with persons, both known and unknown to this Grand Jury, with the intent to defraud and mislead, to counterfeit drugs, in violation of Title 21, United States Code, Section 331(i)(3); and to sell counterfeit drugs, in violation of Title 21, United States Code, Section 331(i)(3).

3

2. It was part of the conspiracy that the defendant, who resided in Seattle, Washington, purchased and resold misbranded and counterfeit drugs from online darknet vendors, including B.A. in the Eastern District of Missouri. Specifically, the defendant purchased misbranded and counterfeit drugs that appeared substantially indistinguishable from generic versions of Xanax.

3. The active ingredient in Xanax (marketed by Pfizer Pharmaceuticals) is alprazolam, which is a benzodiazepine used to treat anxiety disorders that is assigned to Schedule IV of the Controlled Substances Act. Several companies sell generic versions of Xanax, including: Breckenridge Pharmaceutical, Inc., which manufactures pills stamped with "B707"" Qualitest Pharmaceutical, Inc., which manufactures pills stamped with "2090"; and Dava Pharmaceutical, Inc., which manufactures pills stamped with "S903." These pills are sold to consumers who have a valid prescription at an average price of $0.09 per pill.

4. The pills that the defendant purchased from B.A. were not manufactured by pharmaceutical companies, nor were they manufactured, prepared, propagated, compounded or processed in an established registered with the Secretary of Health and Human Services. Instead, as the defendant knew, the pills were manufactured by B.A. using a pill press, imprint stamps that appear similar to those used by pharmaceutical companies, pill binder and active ingredients of several benzodiazepine derivatives, including bromazolam, clonazolam, and flualprazolam. These derivatives are not scheduled substances and have no accepted medical use in the United States.

5. The defendant placed numerous bulk purchase orders of the misbranded and counterfeit pills from B.A. using WickrMe and the online monikers "Packlord206" and "Packlord666." At various times, the defendant provided feedback to B.A. about how to make

4

the misbranded and counterfeit pills appear to be more like the authentic generic versions of Xanax.

6. The defendant paid to B.A. on average of $0.30 per pill for the misbranded and counterfeit drugs, including by sending bitcoin or mailing bulk amounts of U.S. currency to B.A. Over the course of their dealings, the defendant purchased 630,000 pills of misbranded and counterfeit drugs from B.A. The defendant purchased these misbranded and counterfeit drugs with the intent to resell them to others.

7. The defendant rented several post office boxes in Seattle, Washington, using the aliases "Eric Ritter," "Vladimir (Vlad) Klokov," and "Sam Ashley." The defendant provided a false identification in the name of "Vladimir Klokov" as part of a lease rental application for one of the post office boxes.

8. When ordering the misbranded and counterfeit drugs, the defendant instructed B.A. to mail the pills to the aforementioned post office boxes in Seattle, Washington. On numerous occasions, the defendant took or received from such post office boxes packages of misbranded and counterfeit drugs addressed to the above-mentioned fictitious and false names, and the defendant did so for the purpose of conduct, promoting, and carrying on an unlawful business, to wit, the conspiracy to sell counterfeit drugs.

9. The defendant agrees that the following transactions comprised one of his orders of misbranded and counterfeit drugs from B.A.:

   a. On January 1, 2020, the defendant, using the moniker "Packlord206" on Wickr Me, ordered 10,000 pills from B.A. and requested that they be shipped to the defendant's alias "Vlad Klokov" at a post office box in Seattle, Washington.

   b. On January 1, 2020, the defendant sent 0.49328457 bitcoin, valued at the time at

5

   approximately $3,539.65, to B.A. as payment for the pills ordered that day.

  c. On January 2, 2020, B.A. mailed a Priority Mail Express package containing the pills from a post office in the Eastern District of Missouri to the defendant.

  d. On January 3, 2020, the defendant received a package containing the pills sent by B.A.

  10. The defendant's conduct caused a loss in the amount of $56,700 to the various pharmaceutical companies who properly and legally market and sell generic Xanax pills. This amount is calculated by multiplying the 630,000 misbranded and counterfeit pills (that the defendant purchased from B.A. and resold to others) by $0.09 (the average price that actual generic Xanax pills are sold to consumers with valid prescriptions).

## 5. **STATUTORY PENALTIES:**

  The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count I is imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

  The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count II is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

  The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Count V is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:** The parties agree that all counts group together pursuant to Section 3D1.2 and that, pursuant to Section 3D1.3(a), the offense level for Count V is the highest offense level of the counts in the group. As to Count V, the parties agree as follows:

**(1) Base Offense Level:** The parties agree that the base offense level is **seven (7)**, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: **six (6)** levels should be added pursuant to Section 2B1.1(b)(1)(D) because the loss was more than $40,000 but not more than $95,000. The parties also agree that **two (2)** levels should be added pursuant to Section 2B1.1(b)(10) because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. The parties also agree that that **two (2)** levels should be added pursuant to Section 2B1.1(b)(11) because the offense involved the possession or use of an authentication feature and the production of a counterfeit access device or authentication feature.

7

**b. Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that **three (3)** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is **fourteen (14).**

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be

sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

    **d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

e. **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Indictment.

g. **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agencies.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be

11

Case: 4:22-cr-00258-SRC Doc. #: 57 Filed: 06/15/23 Page: 12 of 14 PageID #: 126

tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

12

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

6/15/23
Date

KYLE T. BATEMAN
Assistant United States Attorney

6/15/23
Date

MAXIMILLIAN GREGORY VERBOWSKI
Defendant

15 June 2023
Date

MARK HAMMER
Attorney for Defendant

14